OPINION
Appellant William L. Robinson appeals the December 3, 2001 judgment of conviction and sentence of the Common Pleas Court of Union County, Ohio.
On September 20, 2001, Robinson presented a prescription for Percocet, which is composed of Oxycodone and Tylenol, to the Wal-Mart pharmacy in Marysville, Ohio. After receiving the pills from the pharmacist, Robinson left store property with the pills but never paid for the prescription. The Marysville Police Department was notified, and soon thereafter, the vehicle in which Robinson and three others were traveling was stopped by MPD officers. Upon searching the vehicle, the officers recovered the pills taken from Wal-Mart. Patrolman Craig Nicol then advised Robinson of his Miranda rights and questioned him. Robinson admitted to taking the prescription without paying for it, stating that he took the pills because he could not pay for them.
The four men, including Robinson, were then taken to the police station. After arriving at the station, Officer Chad Seeburg, who worked in the investigations section of the MPD, interviewed them. Officer Seeburg advised Robinson of his Miranda rights before questioning him, but Robinson did not answer many questions. The officer then spoke with the other three men and later returned to Robinson. This time Robinson stated that he left the store with the prescription to ask his friends, who were waiting in the vehicle, for money. However, Robinson did not tell Officer Seeburg whether he eventually paid for the pills. At some point after they arrived at the station, Patrolman Nicol discovered that all four men had possibly injected heroine into themselves, but he did not conduct any type of substance abuse test upon Robinson or the others.
On September 27, 2001, Robinson was indicted by the grand jury of Union County. The indictment alleged that he committed theft of a drug containing a Schedule II controlled substance, namely oxycon/APAP. The indictment further alleged that he was previously convicted of a drug abuse offense, specifically possession of narcotics, on September 26, 1972. Lastly, the indictment stated that the alleged offense was a third degree felony. Thereafter, the State made three separate motions to amend the indictment. The trial court granted two of these motions and struck the other. The last amendment to the indictment changed the date of the previous conviction to May 27, 1975. The case proceeded to a jury trial on December 3, 2001. The jury found Robinson guilty of Theft of Drugs, in violation of Revised Code sections 2913.02(A)(1), (B)(6), and also found that he was previously convicted of the offense of Illegal Possession of Narcotics on or about the 27th day of May, 1975. Immediately following the verdict, the trial court proceeded to sentencing. The court sentenced Robinson to three years of imprisonment. This appeal followed, and Robinson now asserts four assignments of error.
 I. THE GUILTY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE DECISION OF THE TRIAL COURT TO DENY THE DEFENDANT'S MOTION FOR ACQUITAL (sic) MADE AT THE CLOSE OF THE STATE'S CASE WAS ERROR AS THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CHARGE AS MADE UNDER 2913.02(A)(1).
 III. THE DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL.
 IV. THE DEFENDANT WA (sic) DENIED DUE PROCESS WHEN THE STATE OF OHIO FAILED TO PROPERLY ADVISE HIM AND PROPERLY SET FORTH A PRIOR CONVICTION USED FOR ENHANCEMENT OF THE CRIME.
 First and Second Assignments of Error
As the first two assignments of error are related, this Court will address them together. Robinson contends that the verdict was against the manifest weight of the evidence for two reasons. First, Robinson maintains that there was no proof that he intended to take the medication without the consent of the pharmacist or without paying for it at thetime the prescription was filled. In support of this contention, Robinson asserts that the General Assembly intended to enhance the degree of the offense for those who steal drugs without a valid prescription, not for those similarly situated to him who actually have a valid prescription but do not pay for their medication. In addition, he maintains that there was no evidence that he intended to steal the drugs at the time that he lawfully received them from the pharmacist. Secondly, Robinson contends that the State failed to prove that the William Robinson for whom it had a certified copy of a previous judgment entry of conviction was the William Robinson in the case sub judice. Robinson also maintains that the trial court should have granted his Rule 29 motion for acquittal for the reasons set forth in his argument that the verdict was against the manifest weight of the evidence.
In reviewing whether the verdict was against the manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Adkins (Sept. 24, 1999), Hancock App. No. 5-97-31, 1999 WL 797144 (citing State v. Martin (1983), 20 Ohio App.3d 172,175; State v. Thompkins (1997), 78 Ohio St.3d 380, 387).
In addition, Rule 29(A) of the Rules of Criminal Procedure states that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense[.]" Accordingly, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus; see also State v. Boddie (Sept. 6, 2001), Allen App. No. 1-2000-72, 2001 WL 1023107. However, as this Court has previously held, the Bridgeman standard "must be viewed in light of the sufficiency of evidence test[.]" State v. Foster (Sept. 17, 1997), Seneca App. No. 13-97-09, 1997 WL 576353 (citing State v. Jenks, 61 Ohio St.3d 259, paragraph two of the syllabus). In Jenks, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, supra.
Robinson was found guilty of committing Theft of Drugs, in violation of Revised Code sections 2913.02(A)(1), (B)(6). Section 2913.02(A)(1) states:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent[.]
This offense is a first degree misdemeanor. R.C. 2913.02(B)(1). However, the statute further provides that "[i]f the property stolen is any dangerous drug, a violation of this section is theft of drugs, a felony of the fourth degree, or, if the offender previously has been convicted of a felony drug abuse offense, a felony of the third degree." R.C. 2913.02(B)(6). The jury found both that Robinson was guilty of Theft of Drugs and that he was previously convicted of the offense of Illegal Possession of Narcotics, thus making the offense a third degree felony.
The required culpable mental state of the offense of which Robinson was convicted is that of "knowingly." "Knowingly" is defined by statute as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Robinson maintains that the evidence did not reveal that he intended to steal the drugs at the time that the prescription was filled and that he obtained the pills with the consent of the pharmacist, the person authorized to give consent. However, in making this assertion, Robinson fails to recognize that the pills were given to him by the pharmacist with the understanding that Robinson would pay for the pills before leaving store premises and that once he left the store without paying, he knowingly exerted control over Wal-Mart's property without consent. The fact that the prescription was handed to him by the pharmacist does not mean that his retention of it without paying for the prescription was somehow lawful.
Tom McPheron, the Wal-Mart pharmacist, testified that Robinson asked if he could pay for the prescription at the front of the store, Robinson was told that he could, and the bar code on the bottle of pills was then scanned so that Wal-Mart could track whether the pills were paid for within an hour. This undisputed testimony clearly demonstrates that both Robinson and Wal-Mart's employee knew that Robinson had to pay for the prescription before leaving the store. Thus, the jury could reasonably have found that when Robinson left the store with the pills without paying for them, he was aware that his conduct would probably cause a certain result (depriving Wal-Mart, the owner, of the pills without compensation) and that Wal-Mart did not consent to his leaving the store without paying. Moreover, Robinson's statement to Patrolman Nicol that he "had stolen the prescription drugs because he could not afford to pay for them" further supports the jury's finding that Robinson acted knowingly.
Although Robinson further argues that the General Assembly did not intend to enhance the penalty for those with valid prescriptions for controlled substances, he provides no authority for this assertion and ignores the plain language of the statute, which states: "If the property is any dangerous drug[.]" Had the General Assembly intended to exclude those with valid prescriptions who take drugs from a pharmacy without paying for them, it could have easily added the words "obtained without a valid prescription" to this section. Thus, we find Robinson's argument as to the General Assembly's intent in enacting this section without merit.
Robinson also maintains that there was no evidence presented to show that the William Robinson in the previous conviction was, in fact, him. The Ohio Supreme Court has determined that when an offense is enhanced because the accused has a prior conviction, the prior conviction becomes "an element of the offense * * * and must be demonstrated beyond a reasonable doubt." State v. Henderson (1979), 58 Ohio St.2d 171, 173. In order to demonstrate the existence of a prior conviction, this Court has previously held that "this entails the determination that the prior conviction in fact exists, and that the convicted person is the present defendant, the issue of identity. Both facts must be determined by the jury." State v. Matthews (Dec. 5, 1984), Allen App. No. 1-83-58, 1984 WL 8124. Ohio statutory law further provides:
 "Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction." R.C. 2945.75(B).
 Thus, the State must demonstrate that the William L. Robinson in the prior conviction and the William L. Robinson in the case sub judice are one in the same.
The evidence to demonstrate that Robinson had a prior drug conviction was presented to the jury in this case during the testimony of Officer Seeburg. Officer Seeburg was shown State's Exhibit 2, a certified copy of an affidavit signed by William Robinson and filed in the Franklin County Common Pleas Court. This exhibit listed the charged offense as a violation of R.C. 3719.09 and 3719.10, listed the case number as 72CR-03-514, and had 8-9-51 as the date of birth for William L. Robinson and 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 as the social security number for William L. Robinson. Officer Seeburg was then shown State's Exhibit 3, a certified copy of a judgment entry of conviction for William Robinson from the Franklin County Common Pleas Court. This exhibit listed the case number as 72CR-03-514, the same number as the case number in Exhibit 2. The officer then testified that the social security number and birth date on the affidavit were identical to the William L. Robinson in the case at bar.
When presented with similar evidence, the Sixth District Court of Appeals found that "[s]ince the social security number is a unique identifier, this, along with the common birth dates, is evidence by which a jury could conclude that the identity of the person to whom these documents refer is the same." State v. Greene (Dec. 14, 2001), 6th Dist. No. S-01-015, 2001 WL 1606831. We, too, conclude that a social security number is a unique identifier and when coupled with the evidence of identical birth dates, constitutes evidence by which a jury could conclude that the identity of the person to whom these documents refer is the same. When considering the affidavit, the corresponding judgment entry from the same court with the identical case number, and the information that Officer Seeburg gathered regarding Robinson's date of birth and social security number, we conclude that a rational trier of fact could have found this essential element of the crime beyond a reasonable doubt.
For all of these reasons, the first and second assignments of error are overruled.
 Third Assignment of Error
Robinson next contends that he was denied a fair trial because of the ineffective assistance of his trial counsel. This Court has previously addressed the issue of ineffective assistance of counsel when a trial has taken place and has determined that courts must consider "`whether the accused, under all the circumstances * * * had a fair trial and substantial justice was done.'" State v. Jones (Sept. 27, 2000), Auglaize App. No. 02-2000-07, 2000 WL 1420271, at *2 (quoting State v.Calhoun (1999), 86 Ohio St.3d 279, 289). In addition, attorneys licensed by the State of Ohio "are presumed to provide competent representation."Jones, supra (citing State v. Hoffman (1988), 129 Ohio App.3d 403, 407).
The State of Ohio has also adopted the two-part test for determining whether a criminal defendant has been denied the effective assistance of counsel established by the United States Supreme Court in Strickland v.Washington (1984), 466 U.S. 668. See State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus. "A convicted defendant must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Jones, supra
(quoting Strickland, 466 U.S. at 688, 694). As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley, 42 Ohio St.3d at 142. Regarding the second prong of Strickland, reasonable probability requires a probability sufficient to undermine the confidence in the outcome of the trial. Id. It is with these standards in mind, that this Court now scrutinizes the proceedings below.
Robinson contends that his trial counsel was ineffective for several reasons, each of which will be discussed in turn. First, Robinson asserts that his counsel was deficient for not having conducted voir dire of the jury. How an attorney chooses to conduct voir dire, including the choice not to ask questions, is considered a trial strategy. See State v.Mason (1998), 82 Ohio St.3d 144, 157. The Ohio Supreme Court has held that a reviewing court should not "second-guess trial strategy decisions, and `a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. at 157-158 (quoting Strickland, 466 U.S. at 689); see also State v. Bey (1999), 85 Ohio St.3d 487, 493; State v. Davis (1991),62 Ohio St.3d 326, 349-350.
The voir dire conducted by the trial court and the State, which only asked a few questions, itself, did not reveal any potential prejudice to Robinson. In addition, Robinson's trial counsel stated that she was of the opinion that the jury was "thoroughly and sufficiently examined by the Court." There is nothing in the record that would indicate that trial counsel's decision not to make further inquiry of the jury was anything other than trial strategy. Furthermore, Robinson has failed to overcome the strong presumption that his trial counsel's decision not to conduct voir dire falls within the wide range of reasonable professional assistance or how he was materially prejudiced by this choice. Therefore, we do not find that Robinson received ineffective assistance of counsel for this reason.
Robinson next maintains that trial counsel was ineffective because she allowed the State to conduct improper questioning. Namely, Robinson contends that trial counsel failed to object to leading questions by the State and failed to object to the admission of hearsay statements. This Court has previously held that "[t]he failure to object to questions improperly posed by the prosecution is not enough to sustain a claim of ineffective assistance of counsel." State v. Ward (Aug. 17, 1992), Allen App. No. 1-91-63, 1992 WL 198134. As previously stated, Robinson must also demonstrate that he was materially prejudiced by such failure.
Although Robinson maintains that trial counsel did not object to hearsay testimony, he does not indicate where in the record any hearsay testimony occurred, nor does he demonstrate how he was prejudiced by trial counsel's failure to object to any such testimony. As for possible leading questions, Robinson cites to three questions posed by the State during re-direct examination of one of its witnesses in response to questions asked during cross-examination, which he believes are leading. The witness testified during direct examination that Robinson admitted to taking the prescription. On cross-examination, the defense posed questions about Robinson possibly being under the influence of drugs and/or alcohol at the time of his confession. On re-direct, the State asked where the witness was when Robinson confessed to the crime and whether Robinson seemed coherent when he confessed.
Given the testimony of the witness prior to these questions that Robinson confessed to committing the theft, these questions were not formed in a manner to imply the answer that Robinson had confessed; that testimony was already provided. Rather, the questions concerned Robinson's physical and mental state at the time of the confession, to which the questions did not imply the answer. Thus, they were not leading. However, even if these questions were leading and Robinson's trial counsel had objected to them and the objections were sustained, Robinson cannot demonstrate by a reasonable probability that the jury's verdict would have been different due to these few questions. Thus, we do not find that Robinson received ineffective assistance of counsel for this reason.
The third contention made by Robinson as to how he received ineffective assistance of counsel is that his trial counsel failed to object to certain jury instructions. Specifically, Robinson asserts that trial counsel should have objected to the trial court's instruction that the stolen prescription was a dangerous drug and that his previous conviction was a felony. Robinson maintains that whether the prescription was a dangerous drug and whether his previous conviction was a felony are elements of the offense, which the jury must find existed beyond a reasonable doubt.
Tom McPheron, the Wal-Mart pharmacist, testified that on September 20, 2001, a prescription for Percocet for William Robinson was presented to him. He further testified that he filled that prescription and that State's Exhibit 1, a bottle of pills, was that prescription. McPheron also testified that Percocet is composed of Oxycodone and Tylenol and that Oxycodone is a Schedule II narcotic. When asked what he meant by Schedule II, he replied that all controlled substances by the DEA are regulated to five categories and that Schedule II substances have illegal uses. McPheron also testified that Oxycodone is available only by a doctor's written prescription and must be handwritten, not called-in. In addition, McPheron testified that State's Exhibit 1 contained generic Percocet, which he could tell by looking at the pills because the number "512", the identification number for Percocet, was imprinted on the pills. Lastly, McPheron testified that the pills in State's Exhibit 1 contained Oxycodone. At the conclusion of the trial, the trial court provided the jury with an instruction that Oxycodone is a dangerous drug because it is considered a Schedule II controlled substance that may be dispensed only by prescription.
A dangerous drug is defined as "(1) Any drug to which either of the following applies: * * * (b) Under Chapter 3715. or 3719. of the Revised Code, the drug may be dispensed only upon a prescription." R.C.4729.01(F). Ohio statutory law lists Oxycodone as a Schedule II controlled substance. R.C. 3719.01(C); R.C. 3719.41. Because Oxycodone is a controlled substance, a person must be statutorily authorized to be in possession of it. See R.C. 3719.09. As McPheron testified, a person similarly situated to Robinson can only obtain it through a valid prescription. Hence, Oxycodone is considered a dangerous drug.
The undisputed testimony of Tom McPheron established that the prescription allegedly taken by Robinson was generic Percocet, which contained Oxycodone. Further, this undisputed testimony revealed that Oxycodone is a Schedule II narcotic that can only be dispensed with a written prescription from a doctor. Thus, the trial court did not err as a matter of law in instructing the jury that Oxycodone is a dangerous drug. See State v. Reed (1983), 14 Ohio App.3d 63, 68 (holding that "the determination of whether a substance is a controlled substance under R.C. 3719.41 * * * is one of law to be decided by the court"). Accordingly, trial counsel did not provide ineffective assistance by failing to object to this instruction. Moreover, Robinson has failed to demonstrate that he was materially prejudiced by the failure to object to this instruction. Therefore, we do not find that Robinson received ineffective assistance of counsel for this reason.
Robinson further argues that his trial counsel was ineffective because she did not object to the failure of the trial court to instruct the jury that it was to decide whether the prior conviction was a felony offense. In order for the crime of Theft of Drugs to be enhanced to a third degree felony, the offender must have been previously convicted of a felony drug abuse offense. R.C. 2913.02(B)(6). The evidence presented at trial demonstrated that the prior conviction sought to be proven by the State was a conviction for R.C. 3719.09 and 3719.10. The jury specifically found that Robinson was previously convicted of the Illegal Possession of Narcotics on or about May 27, 1975.
The Illegal Possession of Narcotics was formerly codified in R.C.3719.09, but this section did not specify whether its violation constituted a misdemeanor or a felony. Former R.C. 3719.99 provided the penalty for a violation of former R.C. 3719.09, which was imprisonment for "not less than two nor more than fifteen years for a first offense[.]" An offense that is punishable by imprisonment "for more than one year" and not specifically classified as either a misdemeanor or a felony is considered a felony. R.C. 2901.02(E). Thus, a violation of former R.C.3719.09 was a felony as defined by statute. The trial court did not act improperly by determining that the Illegal Possession of Narcotics was a felony drug abuse offense. Accordingly, trial counsel was not ineffective for failing to object to the trial court's action.
Robinson next asserts that he received ineffective assistance of counsel because his trial counsel failed to protect his constitutional rights by filing a motion to suppress his statements to the police, which were allegedly made while he was under the influence of alcohol and drugs, including heroin. However, "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." Kimmelmanv. Morrison (1986), 477 U.S. 365, 384, cited in State v. Madrigal
(2000), 87 Ohio St.3d 378, 389. There must also be a reasonable probability of success in suppressing the statements. See State v. Ligon
(June 18, 2001), 3rd Dist. No. 4-2000-25, 2001 WL 676377; State v.O'Hara (June 29, 2001), 1st Dist. Nos. C-000314, C-000318, 2001 WL 725410.
When the truck in which Robinson was traveling was initially stopped and Robinson and the other three men exited the vehicle, Patrolman Nicol read Robinson his Miranda warnings. Robinson then told Patrolman Nicol that he took the pills because he could not pay for them. Patrolman Nicol stated that the men, including Robinson, "seemed to walk all right," that they understood what was being said, that Robinson did not slur his speech, and that he felt that Robinson was coherent and had the intellect to make a confession at the time that he admitted to taking the prescription. However, Patrolman Nicol stated that some time after Robinson and the other three were taken to the police station, he discovered that all four had possibly used heroin recently, but this discovery came after Robinson initially confessed to Patrolman Nicol. Once at the police station, Officer Seeburg informed Robinson of hisMiranda rights once again. Robinson again admitted leaving the store without paying for the pills, only this time he stated that he left the store to ask his friends for money.
Although Robinson does not contest the fact that the police administered the Miranda warnings properly, he maintains that he did not knowingly and voluntarily waive his Miranda rights. In determining whether a waiver satisfies the Miranda standard, we employ a two-step analysis:
 "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the `totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Moran v. Burbine
(1986), 475 U.S. 412, 421; see also State v. Dailey
(1990), 53 Ohio St.3d 88, 91.
 In the case sub judice, the first step of the Miranda standard was satisfied, as Robinson does not assert that the waiver was obtained through intimidation, coercion, or deception.
In addition, it appears from the totality of the circumstances surrounding the questioning that Robinson was aware of the nature of his rights and the consequences of the decision to abandon them, thus satisfying the second prong of the analysis. Shortly after being apprehended and prior to being taken to the station, Robinson freely admitted to taking the prescription. Robinson also had several encounters with law enforcement, as the record reveals that Robinson was imprisoned on more than one occasion, which demonstrates that he was aware of both the nature of his rights and the consequences of abandoning them. Moreover, his confessions to both Patrolman Nicol and Officer Seeburg were entirely consistent with the testimony of the Wal-Mart employees who testified that Robinson did not pay for the prescription. Thus, given the totality of the circumstances, Robinson did not have a reasonable probability of success had his trial counsel filed a motion to suppress. Therefore, his trial counsel was not deficient in her performance by electing not to file a motion that did not have a reasonable probability of success. Furthermore, there was sufficient evidence, independent of Robinson's confessions, for the jury to find him guilty of Theft of Drugs. Hence, Robinson has failed to demonstrate how but for trial counsel's unprofessional errors, if any existed, the result of the proceeding would have been different as Strickland requires.
Robinson further asserts that trial counsel was ineffective for failing to request a jury instruction of voluntary intoxication because the crime with which he was charged is a specific intent crime. In order to be convicted of Theft of Drugs, as previously stated, the defendant must have acted knowingly. Robinson maintains that he could not have acted knowingly because he was under the influence of heroin. However, "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense." R.C. 2901.21(C). Thus, Robinson was not entitled to an instruction as to voluntary intoxication. Therefore, his trial counsel was not deficient in her performance for failing to request an improper instruction.
Lastly, Robinson maintains that trial counsel was ineffective for failing to object to allegedly improper statements made by the prosecutor about the fact that Robinson did not testify. The statement, which Robinson argues was improper, consisted of the following during the State's closing argument: "Did you hear any testimony that he was on heroin, that he was high on heroin or high on alcohol? You didn't hear any of that." However, immediately preceding these statements, the prosecutor stated the following: "Miss Pelanda [Robinson's trial counsel] brought out the notion that the defendant was on heroin, or drowsy, or groggy at the time. Did you hear any professional testimony with regard to that?" Given the context of the statements, it seems that the prosecutor was indicating the lack of evidence in any form as to whether Robinson was under the influence of alcohol and/or drugs, not specifically to Robinson's decision not to testify. Thus, Robinson's trial counsel was not ineffective for failing to object to these statements. Moreover, the trial court instructed the jury that Robinson had a right not to testify, that they were not to use that as an admission of guilt, and that the closing statements of counsel were not evidence. Therefore, Robinson has failed to demonstrate that he suffered material prejudice from his counsel's failure to object.
In summation, we find that Robinson has failed to establish that his trial counsel was deficient in her performance in any respect. We further find that Robinson has also failed to demonstrate any resultant prejudice as to any of his claims of ineffective assistance.
 Fourth Assignment of Error
In his final assignment of error, Robinson contends that he was denied due process of the law because the State failed to adequately inform him of the prior conviction that it used to enhance the level of the crime. Robinson bases this argument upon the fact that the date stated in the indictment and in the bill of particulars was September 26, 1972, whereas the date that the jury found was the date of the prior conviction was May 27, 1975. In support of this contention, Robinson alleges that whether the indictment was permitted to be amended to the correct date of his prior drug-related conviction was unclear as of the date of trial. Robinson also asserts that the indictment did not comply with the mandatory requirements of R.C. 2941.11. Furthermore, Robinson maintains that he relied upon the date provided in the bill of particulars, which was not amended. We find this contention to be without merit.
Revised Code section 2941.11 provides that an allegation of a prior conviction is sufficient if it states "that the accused was, at a certain stated time, in a certain stated court, convicted of a certain stated offense, giving the name of the offense, or stating the substantial element thereof." The effective date of this statute was October 1, 1953. However, this Court has since held that Crim.R. 7(B) superceded R.C. 2941.11. State v. Helton (Feb. 19, 1993), 3rd Dist. No. 8-92-18, 1993 WL 46464; see also State v. Midwest Pride IV, Inc. (1998),131 Ohio App.3d 1. Criminal Rule 7(B) requires "`an indictment charging the defendant with [an elevated charge] need only give fair and adequate notice that the state will seek to prove that the accused has previously been convicted.'" Midwest Pride IV, Inc., 131 Ohio App.3d at 21 (quotingState v. Larsen (1993), 89 Ohio App.3d 371, 379). Therefore, if Crim.R. 7(B) is satisfied, and the indictment provides "`adequate notice that the state will seek to prove the accused previously had been convicted of prior * * * offenses, the indictment does not need to allege that the accused was, at a certain stated time, in a certain stated court, convicted of a certain stated offense.'" Midwest Pride IV, Inc., supra
(quoting Larsen, 89 Ohio App.3d at 379).
In the case sub judice, the original indictment notified Robinson that the State was seeking to prove that he had previously been convicted of a drug-related offense in the Franklin County Common Pleas Court. However, the stated date of such prior offense was September 26, 1972. The original indictment further provided that the offense charged constituted a third degree felony, pursuant to R.C. 2913.02(B)(6). Thereafter, the State made a motion to amend the indictment due to a typographical error on September 28, 2001. The trial court granted that motion on October 1, 2001, but the date of the prior conviction remained the same. On October 3, 2001, the State filed a bill of particulars, which included the 1972 date for the prior conviction. The State also filed a discovery packet on that same date, which included Robinson's prior record.
On November 28, 2001, the State made a second motion to amend the indictment to reflect the date of the prior conviction as May 27, 1975. In support of this second motion to amend, the State filed a memorandum, which stated that the actual date of conviction was May 27, 1975, rather than September 26, 1972. In its supporting memorandum, the State explained that the September 26, 1972 date was the date that the Franklin County Common Pleas Court chose to defer the imposition of sentence for the offenses and place Robinson on probation for five years for violating R.C. 3719.09, the drug-related offense, and R.C. 3719.101. When Robinson violated this probation, the May 27, 1975 sentence was imposed. Thus, on May 27, 1975, the Franklin County Common Pleas Court imposed the previously deferred sentence of September 26, 1972. After filing the second motion to amend with the supporting memorandum, the State then filed a supplemental discovery packet, which contained the May 27, 1975 judgment entry.
On November 29, 2001, the State filed a motion to strike its November 28, 2001 motion to amend the indictment, stating as its reason that the motion contained an inaccuracy.1 On that same day, the State filed a third motion to amend the indictment to reflect that the date of the prior conviction was May 27, 1975, rather than September 26, 1972, this time without a supporting memorandum. Later that day, the trial court granted the State's motion to strike the November 28, 2001 motion to amend the indictment and granted the State's third motion to amend the indictment, filed on November 29, 2001. Therefore, as of November 29, 2001, the indictment reflected that the alleged prior conviction occurred on May 27, 1975.
While this Court understands that all of these filings created some confusion, the trial court's judgment entry of November 29, 2001 (the last entry regarding the amendment of the indictment), states that the prior date of conviction was May 27, 1975. Thus, Robinson was aware of the date on which the prior conviction allegedly occurred. In addition, the original indictment and all amendments thereto gave fair and adequate notice that the State was seeking to prove that Robinson had previously been convicted of a drug-related offense. Furthermore, at all times during these proceedings, the documents relevant to this issue provide that the prior conviction was in the Franklin County Common Pleas Court and that the current charged offense was a third degree felony. The charged offense can only be enhanced to a third degree felony if the offender has a previous conviction for a felony drug abuse offense. See R.C. 2913.02(B)(6). Moreover, the May 27, 1975 entry was provided to Robinson in the State's supplemental discovery packet. This entry states that Robinson was placed on probation on September 26, 1972, having previously entered a guilty plea, and that the Franklin County court was now imposing the previously deferred sentence because Robinson violated his probation. Therefore, this entry illustrates that the September 26, 1972 proceedings were directly related to the May 27, 1975 proceedings. Lastly, at no point did Robinson seek clarification as to the date of the prior conviction nor did his previous counsel object to notice of the conviction. Therefore, we conclude that although the original indictment and second amendment thereto did not provide the 1975 date, Robinson was fully apprised of the fact that the State was seeking to prove a prior drug-related conviction. Accordingly, the fourth assignment of error is overruled.
For all of these reasons, the judgment of the Common Pleas Court of Union County, Ohio, is affirmed.
Judgment affirmed.
BRYANT and HADLEY, J.J., concur.
1 The nature of this inaccuracy was not revealed in this motion, and the record is unclear as to what inaccuracy existed.